**TUITASI FA'ASEMONO NAMU, UIAGALELEI LEALOFI, UIAGALELEI IONE, ULUFALE SAGUE, FALE FAI'AI for the DESCENDANTS OF FA'AILOILO FAUOLO, Plaintiffs**

**v.**

**SATELE MOMOSEA UOKA for the SATELE FAMILY, Defendant**

High Court of American Samoa
Land and Titles Division

LT No. 39-87

June 8, 1990

Before REES, Associate Justice, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiffs Namu and Fai'ai, Charles V. Ala'ilima
For Plaintiffs Lealofi and Ioane, Levaula Kamu and Fai'ivae A. Galea'i
For Plaintiff Sague, Gata E. Gurr
For Defendants, Steven H. Watson and Tupa'i Se Apa

This case is a sequel to *Satele v. Uiagalelei*, LT No. 17-86, 6 A.S.R.2d 143 (1988), *aff'd sub nom. Satele v. Fai'ai*, 9 A.S.R.2d 19 (1989). The facts of this case, except as hereinafter discussed, are set forth in that opinion [hereinafter "the 1988 case"] at 6 A.S.R.2d 144-46.

The decision in the 1988 case involved most of the land contained in the survey now offered for registration; three of the four parties to that case --- the Satele and Uiagalelei families and Fale Fai'ai for herself and the descendants of Fa'ailoilo Fauolo --- are also parties to the present case. All questions explicitly or necessarily decided in the 1988 case are, of course, res judicata among those parties.

The 1988 case held a tract comprising most of the area now offered for registration to be the individual property of the heirs of Fa'ailoilo. It also held an area to the north of the Fa'ailoilo tract to be Uiagalelei communal land and delineated the boundary between the two tracts. The case further held that a strip comprising roughly one acre in between the Fa'ailoilo and Uiagalelei tracts had been purchased from Uiagalelei by Mariota Tuiasosopo on behalf of himself, his brother, and sister, as part of a settlement approved by the Court in a previous land dispute, and therefore belonged to them.

What is left for us to decide in this case concerns certain "pockets" within the Satele survey at its extreme northern, eastern, southern, and western boundaries. We also must adjudicate the rights of Namu and Ulufale, objectors to the present survey who were not parties to LT No. 17-86; since their claims are almost entirely within the aforementioned "pockets," we will discuss their claims together with those of the other parties.[1]

In discussing the various pockets of land presently at issue, we refer frequently to a composite map admitted into evidence as Exhibit 4.

---

[1] Meleisea Samuelu, another objector to the Satele survey, did not appear in this action despite repeated notices to do so. He therefore did not prove his claim to any part of the land within the survey.

This map, prepared by a surveyor at the request of objectors Fai'ai and Namu, illustrates the claims of all parties except Uiagalelei. The surveyor informed the Court he could not put the Uiagalelei claim on the map due to certain technical defects in the 1972 registered survey on which the claim is based. For the purposes of the present litigation, however, and without prejudice to the rights of non-parties, the Court is satisfied that a 1987 retrace of the 1972 survey (Exhibit 16, designating the 1972 tract as "Saumolia I") and a 1987 composite drawing (Exhibit 13) adequately locate the Uiagalelei claim with reference to the claims of other parties.

## I. The Northern Pocket

The area to the north of the Fale Fai'ai/Fa'ailoilo resurvey (the red line on Exhibit 4, hereinafter "Fai'ai survey") and to the northwest of the land claimed by Namu (the black line on Exhibit 4, hereinafter "Namu claim") is the property of the Uiagalelei family, with the exception of a small section at the western edge of this pocket which is the property of the Satele family. The section which is the property of the Satele survey is the area within the Satele survey that is to the north of the Fai'ai survey and to the southwest of Saumolia I.

Satele claims the whole northern pocket. Although almost all of this area is within the 1972 Uiagalelei registered survey ("Saumolia I"), Satele raises objections to the validity of that survey. He did not, however, raise these objections in the 1988 trial, and the decision in that case held that this part of Saumolia I was the communal property of the Uiagalelei family. Conclusion of Law No. 4, 6 A.S.R.2d at 146.

The objections raised by Satele to the Uiagalelei survey are, moreover, without merit. First, he observes that the land was registered as individual property of the late Uiagalelei Sinapati, whereas it is now claimed as communal land of the Uiagalelei family. The current Uiagalelei titleholder, however, testified that he and the other individual heirs of Uiagalelei had met and agreed that the land should belong to the whole family as communal land. Our law regards communal land as an institution to be sedulously fostered and specifically permits freehold land to revert to communal status "at the request of the owner." A.S.C.A. § 37.0201(b). It would seem to follow *a fortiori* that the same process is possible for individual land. While an individual heir of the late Uiagalelei would have standing to prove that the owners have not in fact agreed that the land should be communal, we cannot see why a rival land claimant from outside the family would have such standing.

143

Satele also points out that the "affidavit of posting" in the 1972 registration was not notarized. As we have had frequent occasion to observe, however, the "affidavit of posting" is an administrative convenience (albeit a salutary one) rather than a statutory requirement, and such self-described "affidavits" were frequently not notarized in those days.

With respect to the area of this pocket that is outside Saumolia I, however, Satele made the best claim. This general area (the northwestern part of the Satele survey, to the west of the area presently leased by the American Samoa Government for a landfill) is one of two areas within which there was solid evidence of long-time Satele occupation and cultivation.

Aside from the dispute between Satele and Uiagalelei in the area discussed above, there is one other dispute in the North. This has to do. with the claim of Uiagalelei that the 1988 case incorrectly held part of Saumolia I to be the property of the Fa'ailoilo heirs. Uiagalelei relies on *Ifopo v. Siatu'u*, AP No. 12-89, holding that a valid land registration conveys title good against the world. Since some of the land held to belong to the Fa'ailoilo heirs in 1988 had already been registered by Uiagalelei, he urges that we restore it to him.

Again, the ownership of the parcel of land to which this argument refers was adjudicated in 1988, twice appealed by Uiagalelei, and twice upheld by the Appellate Division. It is res judicata. In any case, our holding with respect to the southern boundary of Saumolia I was based on a stipulated judgment to which Uiagalelei was a party. When Uiagalelei judicially acknowledged his southern boundary with Tuiasosopo (a relative of Fa'ailoilo who was then occupying the tract belonging to her) he implicitly acknowledged this boundary as against the true owner of the tract then occupied by Tuiasosopo as licensee. Even if the ownership of this area were not res judicata, we would uphold the 1988 result. There is no inconsistency with *Ifopo*; an owner with title good against the world can alienate his land in any number of ways, including stipulated judgment.

II. *The Eastern Pocket*

The "eastern pocket" is defined as the area within Namu's claim. We hold that this area belongs to Namu, except for the portion at the north which is part of the 1972 registered survey ("Saumolia I")

belonging to Uiagalelei, and the portion at the south which is within the Ulufale claim.

Namu raises some excellent arguments to the effect that Uiagalelei's 1972 survey may have been conducted in violation of the statutory requirements and therefore did not convey title good against the world. *See Ifopo, supra*, slip opinion at 4; *Faleafine v. Suapilimai*, 7 A.S.R.2d 108 (1988). Nor, unlike other parties to this case, is Namu barred by res judicata from relitigating the result of the 1988 case; he was not a party to that case.

Namu was, however, a witness in the 1988 case. He testified for Uiagalelei, and he testified under oath that the very land he now disputes with Uiagalelei is Uiagalelei land. The evidence is otherwise in equipoise as between the claims of these two parties; each presented evidence that he has claimed this land at various fairly recent times, and each claimed that his family has claimed it from time immemorial. The balance is tilted by Namu's sworn testimony two years ago that the land he now claims is actually Uiagalelei land.

With respect to Namu's dispute with Ulufale in the South, the evidence is that this area has been occupied by Ulufale at least since the 1950s and probably much longer. A trial transcript from the early part of this century, introduced by Namu to show that Ulufale may have derived his claim from an 'Upolu chief called Te'o Seva'aetasi, had the more important effect of providing reasonably objective evidence that Ulufale has long occupied land in this area. This evidence is inconsistent with the claim of Namu that he owns all the land on both sides of the road all the way from the land presently in dispute to the sea. Moreover, Namu's own testimony corroborated the claim by Ulufale that his family (including his brother Fuimaono, named by Namu as the person who deprived him of his land about thirty years ago) occupied the land for at least twenty years during a time when twenty years was the requisite period for adverse possession. Their occupation of this area was actual, open, notorious, exclusive, continuous, and certainly hostile to the claim of Namu.[2]

---

[2] Because the area in dispute between Ulufale and Namu is outside the Satele survey offered for registration herein, this portion of our decision is not binding on third parties. The decision does not, therefore, permit Ulufale to register this part of the land. Both Namu and Ulufale, however, chose this case as a forum in which to litigate their competing claims in this area, and the decision herein is binding on them and on the other parties to the present case.

### III. The Southern Pocket

The Southern pocket is defined as everything within the Satele survey and south of a line defined by (a) the northern boundary of the Ulufale survey up to the point where it intersects the Fai'ai survey; and (b) the southern boundary of the Fai'ai survey from that point until it intersects the southern boundary of the Satele survey. (The Ulufale and Fai'ai surveys are the green and red lines, respectively, on Exhibit 4.)

For the reasons already discussed in part II above, Ulufale is the owner of the eastern portion of this area. This pocket includes a small portion of the Fai'ai survey; since Ulufale was not a party to the 1988 case, he was free to relitigate the questions decided therein. Tuiasosopo, the principal occupant of the Fai'ai tract for many years, testified that the Ulufale people were his neighbors to the south and also testified to their boundary. This evidence was far more specific than what we had to go on in the 1988 case, and it establishes the boundary claimed by Ulufale with Fai'ai.

The dispute between Ulufale and Satele in the southwest is more difficult. Most of this land is outside the Ulufale fence. The Ulufale witnesses testified that the fence was just to keep cattle from running loose and did not represent the extent of the land occupied by Ulufale from time immemorial. On the other hand, it appears that the Satele family has long had a claim in this area. The Satele claim arises not from any historic claim to Fasamea, but from historic occupation of an area to the south of Fasamea called Lagoe'e. In the first recorded dispute between Ulufale people and Satele people in this area, during the early 1980s, the Satele people referred to the area just west of the Ulufale fence not as part of Fasamea but as part of Lagoe'e.

Lagoe'e is a tract of about forty-four acres beginning at a ridge above the sea and extending northward to land that was labelled the property of "Fauolo" on a 1929 registered survey of Lagoe'e. This land was held to be the property of Satele in *Satele v. Afoa*, LT No. 10-1932, and has been registered as Satele land for over fifty years. It is clearly Satele land, and it is almost as clearly the basis for the Satele claim in the southern part of the area now in dispute. Unfortunately, the 1929 survey is not calculated according to co-ordinates, so we cannot tell exactly where its northern boundary is with respect to the land now in dispute. This would, however, be relatively easy for a surveyor to locate, since the southern boundary is the top of a ridge overlooking the ocean and the northern boundary is a specified distance therefrom.

146

At present we have insufficient evidence to determine the boundary between Satele and Fuimaono; indeed, neither side offered particularly impressive evidence of historic occupation in this boundary area. Accordingly, we hold as follows with respect to the "southern pocket": Ulufale is the owner of that part of his survey which is also within the Fai'ai survey. Satele is the owner of that part of his survey which is outside the Ulufale survey and also outside the Fai'ai survey. With respect to the area within both the Ulufale and Satele surveys, but outside the Fai'ai survey, neither party presented sufficient evidence to sustain a registration of this area. Satele is the owner of that part, if any, which is within the registered survey of Lagoe'e. Adjudication of title to the remaining part of this area, assuming the parties cannot amicably resolve their boundary, will have to be decided in some other case. (We note that Ulufale has surveyed a large area, mostly outside the boundaries of the land now in dispute, apparently with the intention of offering it for registration.)

IV. *The Western Pocket*

There is a small area to the west of the Satele survey which is outside the Fai'ai survey. Only Satele claims this land, and there is some evidence of historic Satele occupation in this area. This land is therefore held to be the property of Satele.

V. *Conclusion*

Accordingly, we hold that Satele, Uiagalelei, Namu, and Ulufale are entitled to register the land described in parts I-IV above as belonging to them, provided that such land is also within the Satele survey offered for registration in the present case. (The land held to belong to Uiagalelei is already registered, but in view of the arguable deficiencies in the 1972 registration it might not be a bad idea to register these portions again.) Such land is to be registered as the communal property of the parties' respective families.

It is so ordered.